IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE WITTIG<br>200 Kali Court<br>Parkton, MD 21120 | *<br><br>* | |
| Plaintiff, | * | |
| v. | * | Civil Action No. |
| MECHANICAL ENGINEERING<br>AND CONSTRUCTION CORP.<br>6159 Edmonson Avenue<br>Catonsville, MD 21228 | *<br><br>*<br><br>* | |
| Serve on:<br>Resident Agent<br>Adam Spence, Esq.<br>409 Washington Avenue<br>Suite 1000<br>Towson, MD 21204 | *<br><br>*<br><br>*<br><br>* | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT FOR DISCRIMINATION AND RETALIATION**

COMES NOW Plaintiff, Michelle Wittig, by and through her undersigned counsel, and states as follows:

1. Plaintiff brings this action against Defendant Mechanical Engineering and Construction Corp. ("Defendant" or "MEC2") pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e) alleging discrimination and a hostile work environment on the basis of gender in employment and for retaliation.

**JURISDICTION AND VENUE**

2. Jurisdiction of this court is founded pursuant to 28 U.S.C. § 1331in that this is a civil action arising under Title VII.

3. Venue lies in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the employment practices alleged to be unlawful were committed by Defendant and its agents within the District of Maryland, Ms. Wittig's personnel records are maintained in this jurisdiction, and Defendant's principal place of business is located within Baltimore County, Maryland.

4. Plaintiff has exhausted all administrative remedies required by Title VII.  Plaintiff timely filed, and later amended, a Charge of Discrimination in May 2018, alleging a hostile work environment and discrimination on the basis of gender.  The Charge was amended to include a claim of retaliation after she was terminated by Defendant less than a month after filing the Charge.  The EEOC, after issuing a Determination finding probable cause on February 28, 2022, issued Plaintiff a Right to Sue letter on or about May 13, 2022.  A copy of the Right to Sue Letter is attached as Exhibit A to this Complaint.

## PARTIES

5. Plaintiff, Michelle Wittig ("Ms. Wittig"), is a female, a citizen of the United States and a resident of the state of Maryland.

6. Defendant MEC2 is a Maryland corporation providing design/build mechanical contractor services to businesses in Maryland and other states.  At all times relevant to the Complaint, MEC2 had in excess of 100 employees.

## FACTS COMMON TO ALL COUNTS

7. Ms. Wittig began her employment with MEC2 in 2006.  At all times relevant to the Complaint, Ms. Wittig held the position of Vice President/Chief Operating Officer.

8. At all times relevant to the Complaint, Ms. Wittig was the only female executive employed by MEC2.

9. At all times relevant to the Complaint, Ms. Wittig received favorable performance reviews, pay increases, and annual bonuses reflecting that she was meeting the requirements of her position and performing well.

10. During her employment with MEC2, Ms. Wittig was also recognized by SmartCEO Magazine as a Top 10 COO in the Baltimore market and recognized by Associated Builders and Contractors of Baltimore as a recipient of one of its Woman of the Year awards.

11. At all times relevant to the Complaint, Ms. Wittig reported directly to the owners of MEC2, Rich Beattie and Fred Kawa.

12. In addition, in 2016, at the direction of Rich Beattie and Fred Kawa, Marie Beattie (Rich's wife), Sarah Kawa (Fred's wife), Stephen Wagner (an MEC2 employee), Julie Snavely (Adam Snavely's wife) and Ms. Wittig were directed to form Titan Demolition and Insulation, LLC ("Titan").

13. Titan was created to bid on projects alongside MEC2 as a female-owned business which would make it eligible for more favorable contracts than MEC2 could be awarded. Amy Wagner, Stephen Wagner's wife, was appointed the managing member of Titan while Ms. Wittig was required to lead Titan as its President due to her experience in management in the construction industry.

14. At all times, Mr. Beattie and Mr. Kawa were intimately involved in Titan's operations and operated as the de facto owners and operators of Titan.

15. Throughout her employment, Ms. Wittig was subjected to a hostile work environment by Mr. Beattie and Mr. Kawa due to her gender.

16. Throughout her employment, Ms. Wittig was excluded from corporate events and networking opportunities through MEC2 that were designated by Mr. Beattie as "NGA", meaning "no girls allowed."

17. These NGA events included company-sponsored trips to Atlantic City, New Jersey and Dallas, Texas, among other places.

18. These events often involved company-sponsored trips to strip clubs and other venues, including a trip to the Jade Spa, a spa that was later found to be a brothel. Corporate credit cards were used to pay for activities during these trips.

19. Despite the fact that Ms. Wittig consistently received favorable performance reviews and bonuses, in early 2018, Ms. Wittig was forced to attend what MEC2 classified as "leadership training" with a unqualified consultant with whom Mr. Beattie had a close, personal relationship.

20. Ms. Wittig, the only female executive, was the only employee in a leadership role who was required to attend leadership training.

21. Contrary to the stated purpose of "leadership training," the consultant instead used the "training sessions" to insult, threaten and intimidate Ms. Wittig as part of Mr. Kawa and Mr. Beattie's overall hostile work environment.

22. Mr. Beattie, in particular, engaged in persistent, hostile and physically threatening behavior towards Ms. Wittig.

23. Mr. Beattie routinely possessed firearms in the workplace and threatened Ms. Wittig with violence.

24. Mr. Beattie frequently used explicit, derogatory terms for females.

25.     For example, in the 300 days prior to Ms. Wittig filing her Charge, Mr. Beattie kept a loaded handgun with hollow-tipped bullets attached to the inside of his desk, positioned near his right knee.  Mr. Beattie also kept a machine gun with bullets in the corner of his office that he claimed was missing a firing pin.  Mr. Beattie's affection for firearms was so well known that even his corporate attorneys referred to him by the nickname, "Gunner" in invoices submitted to MEC2.

26.     In March 2018, Mr. Beattie called Ms. Wittig into his office.  While Ms. Wittig was standing in front of his desk, Mr. Beattie drew a handgun and removed a bullet.  He asked her if she knew what kind of bullet it was.  She responded that she did not.

27.     Mr. Beattie then reloaded the gun, pointed it at her, and told her it was a hollow-tipped bullet that would blow a hole out of the back of her head if she ever opened her mouth about Adam Snavely's, the CEO of Poole and Kent, involvement with Titan Demolition and Insulation, LLC.

28.     Mr. Beattie continued to threaten her, stating that Mr. Snavely's family and union connections would come after her if he lost his job with Poole and Kent if she "ran her mouth."

29.     Male employees were never subjected to similar threats.

30.     Following this incident, as Ms. Wittig was driving in to work, she received a call from the Field Support Coordinator at MEC2 and his warehouse assistant.  They reported to her that Mr. Beattie had brought a loaded rifle in to the office and was using it to shoot rats in the building.

31.     They further advised her that Mr. Beattie had shot and killed a large rat and then instructed them not to dispose of the rat under any circumstance.  He instead directed them to

show the dead rat to Ms. Wittig when she arrived at the office. The loaded rifle was then kept propped in the corner of Mr. Beattie's office.

32. On another occasion, Mr. Beattie discharged the rifle in her office, shooting a hole through a four-inch binder filled with paperwork. Ms. Wittig reported the incident to HR staff but nothing was done to address the situation.

33. No male employees were subjected to similar conduct.

34. In addition to physical threats, Mr. Beattie routinely publicly diminished Ms. Wittig or minimized her role at MEC2 while privately rewarding her for exemplary performance.

35. For example, in December 2017, Ms. Wittig received a substantial performance bonus.

36. During this meeting, Ms. Wittig disclosed that, in the weeks prior, she had learned that Mr. Beattie had told Brian Beckowski, MEC2's Regional Manager for Virginia, that Ms. Wittig was simply his high-paid executive assistant.

37. Further, Ms. Wittig told him that at least three staff members from Virginia had separately called to tell her that Mr. Beattie had told them that they did not need to listen to Ms. Wittig's directions, despite her role with the company.

38. Mr. Beattie questioned who provided her with this information but otherwise did not deny that these conversations had occurred.

39. After this meeting, Mr. Beattie left for an extended holiday vacation. When he returned in January 2018, Mr. Kawa and Mr. Beattie conducted nearly all of their workplace communications with Ms. Wittig via email, significantly impairing her ability to effectively perform her job duties.

40. Male employees who raised concerns with Mr. Beattie were not similarly treated.

41. In April, 2018, in an effort to push her out, Mr. Beattie and Mr. Kawa began creating false accusations related to performance issues.

42. During her employment, MEC2 did not have an available recourse within the company for Ms. Wittig to report or resolve allegations of discrimination or harassment by Mr. Beattie or Mr. Kawa since they were the sole owners and decision-makers of MEC2.

43. On May 17, 2018, Ms. Wittig filed a Charge of Discrimination with the EEOC, detailing the hostile work environment that she was experiencing.

44. On May 18, 2018, when Ms. Wittig reported to work, she documented that someone was logged in to her computer remotely and working in the background. When she tried to power off her computer, she was unable to do so. Further, her access to programs necessary for her to perform her job had been removed.

45. Upon investigation, Ms. Wittig learned that MEC2's IT provider had been directed to assume control of her computer and monitor all of her computer activities, clearly as a result of her filing her Charge.

46. On May 24, 2018, one week after filing her Charge of Discrimination against MEC2, Titan's Managing Member directed Titan's IT provider to deactivate Ms. Wittig's email and access to its computer systems. There was no legitimate, non-retaliatory reason for Titan to deactivate Ms. Wittig's access as she was still an employee and member of Titan.

47. On May 31, 2018, Ms. Wittig learned that Mr. Beattie had mirrored her computer on to his monitor and was monitoring her email and communications in real time. This highly offensive monitoring occurred less than two weeks after Ms. Wittig filed her Charge and was without any legitimate business reason.

48. Following these actions, Ms. Wittig still attempted to perform her job duties but was substantially impaired due to MEC2 and Titan's unilateral, improper conduct.

49. Finally, on June 15, 2018, less than a month after she filed her Charge, Ms. Wittig was terminated by MEC2 and Titan.

50. Ms. Wittig's Charge of Discrimination was the sole motivating factor for her termination.

51. After her termination, MEC2 continued to retaliate against Ms. Wittig. During the week of June 18, 2018, the President of ABC Virginia, a major industry group, called her to report that two MEC2 employees had called him expressly to badmouth Ms. Wittig.

52. Ms. Wittig was also called by the leadership of ABC Metro Washington and the President of ABC Baltimore, who informed Ms. Wittig that Mr. Beattie had falsely told him and others that Ms. Wittig had been terminated for mismanaging the finances of MEC2.

53. On another occasion, Rich Beattie told the Executive Managing Director of Jones Lang LaSalle, a real estate development company, that Ms. Wittig was terminated for poor performance. This information was then spread through the board of directors of ABC Baltimore, which was comprised of other industry leaders, colleagues and potential clients or employers of Ms. Wittig.

54. As a result of MEC2's retaliation and disparagement, Ms. Wittig was unable to find alternative employment due to MEC2's actions and Titan's refusal to allow Ms. Wittig to exit the company, at the direction of Mr. Beattie and Mr. Kawa.

55. To this date, MEC2's owners continue to retaliate against Ms. Wittig by threatening not to do business with any companies in the industry that do business with Ms. Wittig.

## PLAINTIFF'S PROTECTED ACTIVITIES AND SATISFACTION OF CONDITIONS PRECEDENT

56. On May 17, 2018, Ms. Wittig filed a formal complaint of discrimination which was accepted by the Agency.

57. Mr. Wittig then amended her formal complaint on or about June 26, 2018 to add a retaliation claim.

58. The Agency investigated Ms. Wittig's claims and issued a determination letter finding probable cause related to her retaliation claims on or about February 22, 2022.

59. On May 13, 2022, the EEOC issued a Conciliation Failure of Charge and Right to Sue Letter.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964 – Gender Discrimination**

60. Ms. Wittig repeats and realleges Paragraphs 1-59 hereof as if fully set forth herein.

61. Ms. Wittig, a female former employee of MEC2, is a member of a protected class.

62. During the relevant time period, Ms. Wittig was subject to multiple adverse employment actions and a hostile work environment due to her gender as detailed in Paragraphs 1-57.

63. Male employees were not subjected to similar conduct and behavior. Ms. Wittig's gender was the motivating factor for the adverse employment actions and harassment that she experienced.

64. Ms. Wittig suffered damages as a result of MEC2's discriminatory actions including emotional distress, lost wages and benefits, and the costs of bringing this action.

WHEREFORE, Plaintiff prays this Court:

a.      To award her, under Title VII of the Civil Rights Act, all the back pay and fringe benefits she has lost as a result of Defendant's unlawful discrimination against her;

b.      To award her, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

c.      To award her reasonable attorney's fees and costs of this action; and

d.      To award her such other and further relief as this Court deems just and proper.

## COUNT II

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

65.      Ms. Wittig repeats and realleges Paragraphs 1-59 hereof as if fully set forth herein.

66.      Ms Wittig engaged in protected activity when, on May 17, 2018, she filed a Charge of Discrimination against MEC2.

67.      Mere days later, and continuing in the weeks that followed her protected activity, MEC2 and Titan locked Ms. Wittig out of all company systems, subjected her to invasive and unreasonable computer monitoring, and ultimately terminated her employment less than a month after she filed her Charge.

68.      After her termination, MEC2 and Titan engaged in a pattern and practice of disparaging Ms. Wittig, providing false information about the reasons for her termination, and threatening companies in the industry to prevent her from finding other gainful employment.

69.      Ms. Wittig was subjected to all of the above unlawful conduct because she engaged in protected activity when he complained of gender discrimination and filed her Charge.

70.      Ms. Wittig suffered damages as a result of MEC2's retaliatory actions including emotional distress, lost wages and benefits, and the costs of bringing this action.

WHEREFORE, Plaintiff prays this Court:

a. To award her, under Title VII of the Civil Rights Act, all the back pay and fringe benefits she has lost as a result of Defendant's unlawful retaliatory conduct against her;

b. To award her, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial, including front pay for future lost earning capacity;

c. To award her reasonable attorney's fees and costs of this action; and

d. To award her such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Dated: July 26, 2022

Respectfully submitted,

/s/ *Gregory P. Currey*
Gregory P. Currey, Esq. (Fed. Bar No. 28583)
greg@luchanskylaw.com
LUCHANSKY LAW
606 Bosley Ave., Suite 3B
Towson, Maryland 21204
Telephone: (410) 522-1020
Facsimile: (410) 522-1021
*Attorneys for Plaintiff*